605 P.2d 963

Dean ROSECRANS, Plaintiff, Counter-defendant and Respondent,

v.

INTERMOUNTAIN SOAP & CHEMICAL CO., INC., an Idaho Corporation, Defendant, Counter-plaintiff and Appellant.

No. 12689.

Supreme Court of Idaho.

Jan. 29, 1980.

D. Blair Clark, of Anderson, Kaufman, Anderson & Ringert, Boise, for appellant.

Robert P. Tunnicliff, Moscow, for respondent.

BAKES, Justice.

Defendant appellant Intermountain Soap & Chemical Company (ISCC) appeals from a district court judgment rendered in favor of plaintiff respondent Rosecrans. In December, 1972, Rosecrans and ISCC entered into an employment contract for a period of five years. Plaintiff was to manage and

operate ISCC's newly established plastics division. He began working for ISCC in March, 1973. He was terminated in January of 1974. The trial court, sitting without a jury, held that ISCC had wrongfully and without good cause terminated Rosecrans' employment. The court then awarded Rosecrans damages for breach of his employment contract. The trial court also determined that ISCC was liable to Rosecrans for the return of $10,000 which Rosecrans had deposited with the company as security for the employment contract. Finally, the court awarded pre-judgment interest on the above amounts.

Appellant raises four issues on appeal. First, it contends that the trial court erred in finding that ISCC did not have sufficient cause for terminating the employment contract. Secondly, ISCC maintains that the $10,000 deposit was converted into stock, which thereby rendered Rosecrans a stockholder and did not entitle him to return of the deposit. Next, ISCC attacks the allowance of pre-judgment interest on the trial court's damage award. Finally, it argues that the trial court erred in failing to prepare its own findings of fact and conclusions of law.

■ When an employee and employer enter into an employment contract for a definite term, the employee can be discharged prior to the expiration of the term only if he has breached some contractual provision or has otherwise acted in a manner constituting "good cause" for his dismissal. *See, e. g., Chiodo v. General Water Works Corp.*, 17 Utah 2d 425, 413 P.2d 891 (1966). *Cf. Jackson v. Minidoka Irrig. Dist.*, 98 Idaho 330, 563 P.2d 54 (1977) (unless employment contract is for fixed duration, employer may terminate the relationship at any time). Both parties agree that the paramount issue in this case is whether or not ISCC had "good cause" to discharge respondent.

■ Generally, where there exists a conflict with respect to the circumstances surrounding the employee's discharge, the existence of good cause is an issue for the trier of fact. *See Ameline v. Pack & Co.,*

*Inc.*, 157 Mont. 301, 485 P.2d 689 (1971); *Fox v. Fifth West, Inc.*, 153 Mont. 95, 454 P.2d 612 (1969); *Gaswint v. Case*, 265 Or. 248, 509 P.2d 19 (1973). *Cf. C. R. Crowley, Inc. v. Soelberg*, 81 Idaho 480, 346 P.2d 1063 (1959) (where there exists conflicting evidence regarding whether a party breached a contract, resolution of the issue is for the trier of fact). When the employee establishes that he has been terminated in violation of the employment contract, the employer has the burden of proving the existence of good cause for the termination. *Lucas v. Whittaker Corp.*, 470 F.2d 326 (10th Cir. 1972); *Williams v. Action for a Better Community, Inc.*, 51 A.D.2d 876, 380 N.Y.S.2d 138 (1976); *Chiodo v. General Water Works Corp.*, 17 Utah 2d 425, 413 P.2d 891 (1966); *Morris v. Rosenberg*, 64 Wash.2d 404, 391 P.2d 975 (1964). *But see Gaswint v. Case*, 265 Or. 248, 509 P.2d 19 (1973).

Appellant contends that there were any number of good reasons for discharging the respondent. The company's allegations include insolence, disrespect, failure to maintain morale, inefficiency, incompetency, and conduct endangering the safety of others.

■ On appeal, the findings of fact of the district court will be upheld if they are not "clearly erroneous." I.R.C.P. 52(a). We have reviewed the record and have concluded that the findings of the trial court are not "clearly erroneous." The witnesses in this case disagreed about nearly everything and, as one would expect in such a situation, credibility was a key issue before the court below. Although this Court is capable of reviewing the sufficiency of evidence to support factual findings, we are without the firsthand observation necessary to evaluate a witness's credibility. *See, e. g., Boise Junior College Dist. v. Mattefs Const. Co.*, 92 Idaho 757, 450 P.2d 604 (1969). In this regard, the court below evaluated the demeanor of the witnesses and other indicia of credibility and specifically concluded that the testimony of ISCC's witnesses was "exaggerated."

Although ISCC alleged several categories of employee misconduct which, if found to be substantiated by the evidence, would have provided justifiable legal cause for discharge, nonetheless there exists sufficient evidence in the record to support the district court's finding that such allegations were not adequately substantiated and that therefore ISCC failed to meet its burden of proof. We therefore affirm the trial court's conclusion that the respondent was wrongfully discharged from his employment in violation of his employment contract.

■ The second issue raised by appellants relates to the $10,000 "security deposit" forwarded to the company by Rosecrans at the commencement of his employment. The employment agreement specified as follows:

"The total of $10,000 advanced by Rosecrans is to be recorded on the books of ISCC as security for the employment contract described . . . above and is to accrue interest [at] 8% discount rate. If the employment contract is carried to completion, the advance plus accrued interest is to be repaid to Rosecrans in monthly payments in amounts not to exceed the payments made by ISCC on the equipment lease. If Rosecrans leaves the employ of ISCC by his own choice before the employment contract is completed he will forfeit any right in or title to this advance.

". . . There are to be no restrictions on the use of the cash advanced by Rosecrans . . . ."

Although ISCC concedes that originally the $10,000 payment was intended only as a security deposit, it later found it necessary to convert such payment into a stock purchase in order to satisfy requirements for obtaining an S.B.A. loan. At that point, ISCC unilaterally converted the fund from a security deposit to a capital investment. Later, however, Rosecrans apparently accepted the stock certificates and acted in some respects as the owner of stock. However, Rosecrans testified that he was nonetheless led to believe that, regardless of the form of his investment, he would be entitled to return of the deposit as specified in the contract. There is nothing in the record which indicates the contract was modified to eliminate ISCC's obligation to return the $10,000, with interest, at the completion of the employment contract. The employment contract itself is quite clear, and therefore, as the agreement indicates, the form in which the company held the $10,000 payment is not determinative. Even if Rosecrans engaged in activity incident to stock ownership, he was entitled to the return of the $10,000 payment.

■ Appellant next objects to the inclusion of pre-judgment interest in the damage award. Appellant's primary objection appears to be that Rosecrans failed to include a claim for interest in his complaint. This omission is not fatal. *Farm Development Corp. v. Hernandez*, 93 Idaho 918, 478 P.2d 298 (1970). In *Farm Development*, we did not require a claim for pre-judgment interest to be included in the complaint, but we did observe that pre-judgment interest should not be allowed when the principal amount of liability was unliquidated.[1] In the instant case, the contractual liability is readily ascertainable. Rosecrans was to receive $1,000 per month in salary.[2] When

---

1. In *Farm Development*, we denied plaintiff's claim for pre-judgment interest. In that case, a contract specified that plaintiff was entitled to one-half the cost of fertilizing a piece of farmland. We observed that the amount actually paid for the fertilizer and the value thereof was in dispute. The defendant's contractual liability in that case was therefore not mathematically ascertainable and hence unliquidated.

It should be noted that interest in this case is authorized, though not required, by I.C. § 28–22–104, which provides in pertinent part:

"*Legal Rate of Interest.*—When there is no express contract in writing fixing a different rate of interest, interest is allowed at the rate of eight cents (8¢) on the hundred by the year on:

1. Money due by express contract.
. . . ."

2. Under the contract for employment, Rosecrans was to receive $1,000 per month plus a share of the profits from ISCC's plastics division. Although Rosecrans had asked for his share of the profits in his complaint, Rosecrans

the amount of liability is mathematically and definitely ascertainable, pre-judgment interest may be awarded. *Id.* at 920, 478 P.2d at 300. The trial court's award of pre-judgment interest was not error.

Appellant argues that the trial court's adoption of findings of fact and conclusions of law prepared by opposing counsel constituted reversible error. As we have previously observed, the findings and conclusions adopted by the trial court are supported by the evidence adduced at trial. Although we again disapprove of such a practice, the findings and conclusions in this case appear to accurately reflect the ruling of the trial court. *See Marshall Bros., Inc. v. Geisler,* 99 Idaho 734, 588 P.2d 933 (1978).

The judgment of the trial court is affirmed. Costs are awarded to respondent. No attorney fees allowed.

DONALDSON, C. J., McFADDEN and BISTLINE, JJ., and WALTERS, J. pro tem., concur.

and ISCC stipulated at the commencement of trial that Rosecrans' profits claim would be dropped in exchange for dismissal of ISCC's counterclaim. At the trial, the only amounts in issue were the $10,000 deposit for which the contract fixed interest at 8%, and the monthly salary payments of $1,000. Both amounts are unquestionably definite.