IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 52466

| DAWN A. MACIOSEK, | ) | |
|---|---|---|
| | ) | **Opinion Filed: February 27, 2026** |
| Plaintiff-Appellant, | ) | |
| | ) | **Melanie Gagnepain, Clerk** |
| v. | ) | |
| | ) | |
| VICTOR G. DOW, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Barry McHugh, District Judge.

Amended judgment of the district court ordering partition of real property by sale and distribution of proceeds, <u>affirmed</u>.

Bistline Law, PLLC; Arthur M. Bistline, Coeur d'Alene, for appellant.

James, Vernon & Weeks, PA; Melanie E. Baillie, Coeur d'Alene, for respondent.

_____

HUSKEY, Judge

Dawn A. Maciosek appeals from the district court's amended judgment ordering Maciosek and Victor G. Dow to partition real property by sale and share the proceeds. For the reasons set forth below, we affirm the district court.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Maciosek and Dow were in a romantic relationship beginning in 2015 but never married. In 2017, Maciosek and Dow discussed purchasing a house together and hired a real estate agent. Maciosek and Dow looked at most properties together, and Maciosek looked at some properties without Dow. On July 16, 2018, Maciosek signed a purchase and sale agreement to purchase the property at issue pursuant to a federal program that provided financial assistance in the purchase; the program required Maciosek to obtain a rural development loan. Maciosek also paid $500 in earnest money. Dow did not sign the purchase and sale agreement at that time because he did not

think his credit was good enough and his only source of income was from disability income. Maciosek was pre-approved for a loan in the amount of $123,625.

Prior to the closing date, Maciosek and Dow were advised Dow needed to be added to the purchase and sale agreement as a co-borrower. Maciosek and Dow signed an addendum to the purchase and sale agreement, which added Dow as an additional purchaser of the property. Then, at closing, Maciosek and Dow both completed and signed loan application documents and executed a deed of trust and promissory note in the amount of $142,929, with $20,670 of the loan proceeds held by Evergreen Home Loans (Evergreen) to cover costs of required repairs to the property. Maciosek and Dow received closing cost assistance in the amounts of $1,415 and $2,000 from the Idaho Housing and Finance Association (IHFA). Maciosek and Dow are listed as co-signers on the loan and are both listed on the quitclaim deed, deed of trust, borrower's settlement statement, gift commitment letter, and closing cost assistance statement from IHFA as purchasers of the property. The loan documents indicate that Maciosek and Dow purchased the home as tenants in common.

Maciosek and Dow moved into the property and began making repairs. Most, if not all, of the costs to repair the property were paid from the loan proceeds held by Evergreen. Dow did the majority of the work inside and outside of the home but was not paid for his labor because he believed he was a co-owner of the property. Maciosek made the monthly mortgage payments beginning in November 2018 in the amount of $1,010; in March 2023, the monthly payments dropped to $940. Dow paid Maciosek $200 per month until March 2023 as his contribution to the mortgage payments. The relationship between Maciosek and Dow soured and in February 2023, Maciosek asked Dow to move out of the house, but Dow refused. Maciosek and Dow slept in separate bedrooms until Dow moved out on October 15, 2023.

Maciosek filed suit against Dow, alleging, among other claims, that the property should be partitioned.[1] Following a bench trial, the district court entered its findings of fact and conclusions of law. The district court found Maciosek and Dow, as co-tenants in common, each hold an undivided fifty percent interest in the property, and partition by sale, as stipulated to by Maciosek

---

[1] Maciosek also alleged claims for quiet title to real property and quiet title to personal property, which were dismissed by summary judgment, and a claim for damage to property, which was dismissed by directed verdict at trial. The dismissal of these claims is not challenged on appeal.

2

and Dow, is proper. After the district court entered the final judgment, Maciosek moved to alter or amend the judgment pursuant to Idaho Rule of Civil Procedure 59(e). Maciosek argued the district court erred in finding the parties intended Dow to have an undivided fifty percent interest in the property. Maciosek also argued she was entitled to reimbursement from Dow for contribution expenses related to the mortgage payments and improvements to the property, including prejudgment interest. After a hearing, the district court granted Maciosek's motion as to her claim regarding expense contributions, in part, and found Maciosek was entitled to contributions for the mortgage payments while Dow lived at the property, but not for the mortgage payments after Dow vacated the property. The district court also found Maciosek was not entitled to contributions for improvements to the property or to prejudgment interest. The district court denied Maciosek's motion to alter or amend the court's finding of equal interests and found the burden rested with Maciosek to show by a preponderance of the evidence that Maciosek and Dow intended to hold unequal interests in the property and Maciosek offered no such evidence. Maciosek appeals.

## II.

## STANDARD OF REVIEW

Where a trial court sits as a finder of fact without a jury the court is required to enter findings of fact and conclusions of law. I.R.C.P. 52(a); *Est. of Hull v. Williams*, 126 Idaho 437, 440, 885 P.2d 1153, 1156 (Ct. App. 1994). Our review of the trial court's decision is limited to ascertaining whether substantial, competent evidence supports the findings of fact, and whether the trial court correctly applied the law to the facts as found. *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009); *Cummings v. Cummings*, 115 Idaho 186, 188, 765 P.2d 697, 699 (Ct. App. 1988). Thus, we defer to findings of fact that are not clearly erroneous, but we freely review the trial court's conclusions of law reached by applying the facts found to the applicable law. *Staggie v. Idaho Falls Consol. Hosps.*, 110 Idaho 349, 351, 715 P.2d 1019, 1021 (Ct. App. 1986). Where there is conflicting evidence, it is the trial court's task to evaluate the credibility of witnesses and to weigh the evidence presented. *Desfosses v. Desfosses*, 120 Idaho 354, 357, 815 P.2d 1094, 1097 (Ct. App. 1991). We will not set aside the trial court's factual findings as clearly erroneous if they are supported by substantial and competent, even if conflicting, evidence. *Kennedy v. Schneider*, 151 Idaho 440, 442, 259 P.3d 586, 588 (2011). Evidence is substantial and competent if a reasonable trier of fact would accept that evidence and rely on it to determine

3

whether a disputed point of fact was proven. *Hull v. Giesler*, 156 Idaho 765, 772, 331 P.3d 507, 514 (2014); *Hutchison v. Anderson*, 130 Idaho 936, 940, 950 P.2d 1275, 1279 (Ct. App. 1997).

We review an award of prejudgment interest under the abuse of discretion standard. *AgStar Fin. Servs., ACA v. Nw. Sand & Gravel, Inc.*, 168 Idaho 358, 364, 483 P.3d 415, 421 (2021). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

**III.**

**ANALYSIS**

Maciosek raises three issues on appeal. First, Maciosek argues the district court erred when it found Dow has an undivided fifty percent interest in the property because Maciosek and Dow did not have an agreement that Dow would have any interest in the property. Second, Maciosek argues the district court erred when it found Dow was not required to contribute his share of the monthly mortgage payments after he moved out of the property. Lastly, Maciosek argues the district court erred when it found the amount of the monthly mortgage payments were not liquidated and denied Maciosek prejudgment interest for Dow's unpaid share of the monthly mortgage payments. Dow responds by arguing the unambiguous quitclaim deed naming Dow is dispositive of Dow's ownership interest in the property, and Maciosek has not met her burden to rebut the presumption of equal interests by a preponderance of the evidence. Dow also argues he was ousted from the property and his inability to enjoy the property offsets any requirement to pay his share of the mortgage after his ouster. Lastly, Dow argues Maciosek is not entitled to prejudgment interest because there was no express agreement that Dow would pay an equal share of the monthly mortgage payments; thus, Maciosek's damages were unliquidated and unascertainable until the district court rendered its decision after trial. Dow requests attorney fees on appeal.

**A.    Equally Shared Ownership Interest**

Maciosek argues it was error for the district court to conclude Maciosek and Dow had an agreement that Dow would have a fifty percent interest in the property because neither Dow nor Maciosek testified that they had such an agreement, and their conduct suggests Dow was only

4

added to the transaction at the request of an unknown third-party. Dow argues the unambiguous quitclaim deed naming him is dispositive of his ownership interest in the property and it was Maciosek's burden to rebut the presumption of equal interests by a preponderance of the evidence, which she did not do. The district court did not err in finding Maciosek failed to meet her burden to rebut the presumption, by a preponderance of the evidence, that Dow has an equal share in the property.

"An action for partition asks the court to divide property owned by multiple co-tenants based on each individual owner's interests in the property." *Wilson v. Mocabee*, 167 Idaho 59, 67, 467 P.3d 423, 431 (2020). In a partition action, the district court must engage in a three-step process. *Demoney-Hendrickson v. Larsen*, 171 Idaho 917, 922, 527 P.3d 520, 525 (2023). First, the district court determines whether the parties in the action possess some interest in the property at issue. *Id.*; *see* I.C. § 6-501. Second, the district court determines the parties' respective ownership interests in the subject property. I.C. §§ 6-501, -508; *Demoney-Hendrickson*, 171 Idaho at 922, 527 P.3d at 525. Third, the district court determines the most appropriate method of partition, such as a partition in kind or a partition by sale. *Demoney-Hendrickson*, 171 Idaho at 922, 527 P.3d at 525; *see* I.C. §§ 6-501, -508.

Every interest in real estate is presumed to be a tenancy in common, unless the deed expressly provides otherwise. I.C. § 55-508; *Demoney-Hendrickson*, 171 Idaho at 922, 527 P.3d at 525. The district court looks to the instrument conveying the property at issue to determine whether the parties in the action possess an interest in the property. *Demoney-Hendrickson*, 171 Idaho at 922, 527 P.3d at 525. "When the language of a deed is unambiguous, the intention of the parties is a matter of law ascertained from the deed's plain language without the aid of extrinsic evidence." *Id.* (quoting *Hoch v. Vance*, 155 Idaho 636, 639, 315 P.3d 824, 827 (2013)). If the deed does not expressly identify the parties' respective interests on its face, then it only indicates an interest has been granted but not what percentage of interest has been granted. *Demoney-Hendrickson*, at 923, 527 P.3d at 526. "When an instrument is silent as to the parties' respective interests in the property sought to be partitioned, a presumption of equal shares applies." *Id.* at 924, 527 P.3d at 527.

This presumption "may be rebutted with a showing, by a preponderance of the evidence, that the parties intended to share unequally in the property." *Id.* at 925, 527 P.3d at 528. "The party opposing equal ownership bears this burden." *Id.* In conducting this analysis, the district

court can consider extrinsic evidence; however, there is no presumption that designates ownership interests according to the parties' respective financial contributions to the property. *Id.* Rather, the district court should consider the totality of the circumstances to determine the parties' respective shares. *Id.*

Maciosek cites *Demoney-Hendrickson* for the proposition that for individuals to be considered co-owners of real property, they must have an agreement demonstrating as much. Maciosek argues Dow's inclusion in the transaction was not the product of any agreement between herself and Dow; therefore, the district court erred when it concluded Maciosek and Dow, as co-tenants in common, each hold an undivided fifty percent interest in the property. Maciosek asserts Dow's inclusion was a requirement issued from an unknown third-party to only complete the transaction and Maciosek did not intend to deed any interest to Dow. Maciosek misunderstands the analysis of this issue.

As discussed above, the first step of the *Demoney-Hendrickson* framework requires the district court to determine whether the parties in the action possess an interest in the property. *Id.* at 922, 527 P.3d at 525. Both Maciosek and Dow are listed on the quitclaim deed, deed of trust, borrower's settlement statement, gift commitment letter, and the closing cost assistance statement from the IHFA as purchasers of the property. The district court found Maciosek "was aware of, and intentionally agreed to, Dow being added as a co-purchaser." Regardless of what Dow did or did not do prior to signing the relevant documents, Dow is named on the relevant documents and therefore he has an interest in the property. Additionally, in Maciosek's response to Dow's motion for summary judgment, Maciosek argued that Dow had a forty-five percent interest in the property. It is specious to argue on appeal that Dow had no interest in the property when Maciosek argued in the district court that Dow had a forty-five percent interest. Therefore, when applying the first step of the *Demoney-Hendrickson* framework, the district court did not err in concluding both Maciosek and Dow have some interest in the property.

The second step of the *Demoney-Hendrickson* framework requires the district court to determine the parties' respective ownership interests in the subject property. I.C. §§ 6-501, -508; *Demoney-Hendrickson*, 171 Idaho at 922, 527 P.3d at 525. Maciosek maintains it was error for the district court to conclude the parties agreed Dow would have a fifty percent interest in the property. Maciosek further contends there is no evidence supporting a finding that Dow and Maciosek had an agreement that Dow would be a fifty percent owner of the property. The

6

quitclaim deed is silent regarding the respective interests of Maciosek and Dow. Therefore, it is presumed Maciosek and Dow each have an undivided fifty percent interest in the property. *Demoney-Hendrickson*, 171 Idaho at 924, 527 P.3d at 527. As the party opposing equal ownership, it is Maciosek's burden to rebut the presumption of equal interest by a preponderance of the evidence. *Id.* at 925, 527 P.3d at 528. To the extent there is no evidence supporting an argument Dow has less than a fifty percent ownership interest in the property, Maciosek has failed to meet her evidentiary burden to rebut the presumption of equal ownership.

Moreover, the district court's finding that Maciosek and Dow shared equally in the property is supported by substantial evidence. Dow was an active participant in the search for the property, he applied for the loan with Maciosek to purchase the property, and is obligated under the mortgage contract terms in the same manner and extent as Maciosek. Dow personally worked on and completed extensive renovations on the property, even though he was not reimbursed for his work. Although Maciosek testified that she paid for the majority of the repairs, the district court found the evidence at trial showed most, if not all, of the repairs were paid for out of the $20,670 loan proceeds set aside at closing for the repairs. Maciosek and Dow also shared the upkeep, maintenance, and monthly expenses for the property. The district court considered the totality of the circumstances and thus, properly applied the second step of the *Demoney-Hendrickson* framework. The district court's finding that Maciosek and Dow each hold an equal share of interest in the property is supported by substantial evidence.

Maciosek argues that Dow's presumptive fifty percent ownership interest is rebutted because Dow did not testify to any conversation with Maciosek about co-ownership and Dow's "conduct does not look like the conduct of a person who is making a major financial investment." Maciosek supports this argument by stating that Dow did not look at the property until a week before the closing date; did not walk through the property to assess the required repairs before deciding to purchase it; and did not know the amount he was obligated to pay each month. Maciosek further argues Dow never testified that prior to the transaction, he and Maciosek agreed he should not be part of the transaction because of his disability or how to protect his interest in the property since he would not be on the title after closing. This Court will not reweigh evidence nor substitute our view of the facts for the view of the district court. *Wilson*, 167 Idaho at 64, 467 P.3d at 428. Maciosek's arguments primarily consist of what Dow did or did not do prior to signing the relevant documents. Regardless of whether the parties discussed Dow's involvement

in the purchase, Dow was nonetheless involved. There was some discussion between Dow and Maciosek about Dow's co-ownership because with Maciosek's knowledge and approval, Dow signed the documents required to purchase the property. Dow's involvement in the transaction and the presence of his name on the relevant documents results in a presumptive fifty percent ownership interest in the property. Based on the record, the district court did not err in concluding Maciosek failed to rebut the presumption of Dow's equal ownership.

The third step of the *Demoney-Hendrickson* framework requires the district court to determine the most appropriate method of partition, such as a partition in kind or a partition by sale. *Demoney-Hendrickson*, 171 Idaho at 922, 527 P.3d at 525; *see* I.C. §§ 6-501, -508. Maciosek and Dow stipulated the property cannot be divided without great prejudice and it must be partitioned by sale. Consequently, the district court did not err in determining the property must be partitioned by sale.

Having correctly applied the analytical framework set forth in *Demoney-Hendrickson*, the district court did not err in concluding that Dow holds an undivided fifty percent ownership interest in the property and that partition by sale is proper.

**B.      Monthly Mortgage Obligation After October 2023**

Maciosek argues the district court erred when it found Dow was not required to contribute fifty percent of the monthly mortgage payment after Dow moved out of the property for two reasons. First, Maciosek argues the district court did not find that Maciosek ousted Dow but instead, found "Maciosek asked Dow to vacate the home in February 2023 and Dow did so in October 2023." Maciosek argues this finding shows Dow left of his own free will. Second, Maciosek argues that even if she prevented Dow from using the property, excusing Dow from making his share of the mortgage payment was not a remedy available to him. In response, Dow maintains the district court provided the appropriate remedy when it determined that Maciosek was required to pay the full monthly mortgage payment after October 2023 because Maciosek had exclusive possession of the property after she prohibited Dow from the use and enjoyment of the property to which he was entitled.

A tenant in common is entitled to the use and possession of the common property, subject only to the condition that he may not exclude another co-tenant from like use and possession. *In re Randall's Est.*, 64 Idaho 629, 632, 132 P.2d 763, 766 (1942). A tenant is ousted from the property when the other co-tenant excludes the tenant from use and possession of the common

8

property. *Cox v. Cox*, 138 Idaho 881, 886, 71 P.3d 1028, 1033 (2003). A co-tenant who leaves the property because they feel unwelcome after being asked to leave is sufficient for an ouster finding. *Id.* at 886-87, 71 P.3d at 1033-34. In *Cox*, a brother and sister were co-tenants. *Id*. at 883, 71 P.3d at 1030. The brother advised his sister he was putting the house up for sale and she "had better find a place to live." *Id.* at 886, 71 P.3d at 1033. The district court found the sister's testimony indicated that she did not feel welcome to occupy the property. *Id.* The district court concluded the sister had been ousted and she was entitled to one-half the fair rental value of the house from the time she was ousted until the house was sold. *Id.* at 886-87, 71 P.3d at 1033-34. The Idaho Supreme Court affirmed the district court and held that substantial, competent evidence supported the district court's findings. *Id.* at 887, 71 P.3d at 1034.

Preliminarily, Maciosek fails to provide any authority in support of her argument that she did not oust Dow from the property. A party waives an issue on appeal if either argument or authority is lacking. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997). The district court implicitly found that Maciosek ousted Dow and Maciosek fails to challenge that factual finding on appeal, thus we defer to the district court's factual finding. Moreover, the district court's finding is supported by substantial and competent evidence.

Maciosek asked Dow to leave in February 2023; however, Dow refused to leave. Maciosek and Dow then moved into separate bedrooms. Dow testified that Maciosek disassembled the bed he was using and placed the pieces in another room in the house, leaving Dow to sleep on the floor. Dow also testified that Maciosek engaged in other behavior that indicated she was attempting to push Dow out of the house including taking all the bath towels and locking them in her room, calling Dow names, and leaving Dow without a working vehicle. Dow ultimately left on October 15, 2023, after Maciosek made it "very, very difficult" for Dow to remain in the house. Like in *Cox*, there is substantial, competent evidence supporting the district court's implicit finding that Maciosek ousted Dow from the property.

Maciosek next argues that even if Dow was ousted from the property, excusing Dow from paying his share of the monthly mortgage payment after October 2023 is not a remedy allowed for ouster. In support of her argument, Maciosek cites to *Brewer v. Wash. RSA No. 8 Ltd. P'ship*, 145 Idaho 735, 738, 184 P.3d 860, 863 (2008). Therein, the Idaho Supreme Court listed three remedies available for a breach of contract that resulted in an ousted co-tenant: (1) voiding the contract by the non-leasing party; (2) compensation for the fair rental value of the common property; or

(3) partition of the property. *Brewer*, 145 Idaho at 738, 184 P.3d at 863 (internal citations omitted). Although not explicitly stated, it appears Maciosek is arguing the remedies listed in *Brewer* are the exclusive remedies for an ousted co-tenant. However, *Brewer* is inapposite to the facts of this case. The issue in *Brewer* was whether partition was the exclusive remedy for co-tenants of a property when one co-tenant leased a portion of the property without the consent or authorization of other co-tenants. *Id*. at 737-38, 184 P.3d at 862-63. The Court held that where one co-tenant had entered a lease without the consent of other co-tenants, partition was not the exclusive remedy. *Id*. at 739, 184 P.3d at 864.

A more relevant case is *Cox*, where the Court addressed the remedy for ouster of a co-tenant in a partition of property case. There, the Court adopted the majority rule regarding ouster of co-tenants: "When one co-tenant excludes another co-tenant from use and possession of common property, the excluding co-tenant is liable for the value of their exclusive use of the property, including rent." *Cox*, 138 Idaho at 886, 71 P.3d at 1033. In this case, the district court found that "because Maciosek asked Dow to vacate the home in February 2023 and Dow did so in October 2023 . . . the Court finds that Maciosek is not entitled to contribution for mortgage payments after October 2023." The district court found Maciosek was liable for her exclusive use of the property and that liability was equal to the amount of the monthly mortgage payment. The district court's remedy is consistent with *Cox*, and we find no error in the district court's order excusing Dow from paying his share of the mortgage payment after he was ousted from the property.

## C. Prejudgment Interest

Maciosek argues that because she is entitled to contribution for the mortgage payments from December 2018 to October 2023, Dow is required to pay her prejudgment interest at twelve percent on the sums he has not paid, and it was error for the district court to deny her prejudgment interest. Dow argues a request for prejudgment interest was not pled. Dow further argues his financial obligation to Maciosek was not ascertainable until the district court ruled on Maciosek's motion to alter or amend the judgment because Maciosek asserted there was no agreement or understanding between Maciosek and Dow recognizing Dow's ownership interest in the property. We hold the district court did not err in finding Maciosek is not entitled to prejudgment interest.

10

In relevant part, Idaho Code § 28-22-104(1) provides that an annual rate of twelve percent interest is allowed on money due by express contract when there is no express written contract fixing a different interest rate. "There need be no prayer for interest contained in the complaint to justify the award of prejudgment interest." *Ross v. Ross*, 145 Idaho 274, 277, 178 P.3d 639, 642 (Ct. App. 2007). Prejudgment interest is available where the damages are liquidated or readily ascertainable by mathematical process. *Id.* at 276, 178 P.3d at 641. A claim is unliquidated or unascertainable where some factor necessary to calculate the amount of damages must be determined by a trier of fact. *AgStar Fin. Servs., ACA*, 168 Idaho at 371, 483 P.3d at 428. Additionally, prejudgment interest can only be awarded as a matter of law from the date the sum became due in cases where the amount claimed, even though not liquidated, is capable of mathematical computation. *Id.* This limitation is based on the equitable consideration "that a person who could not determine the amount owed should not be charged interest on the sum that is ultimately found to be due." *Id.* (quoting *Ross*, 145 at 276, 178 P.3d at 641).

Here, Maciosek argued that Dow lacked any ownership interest in the property. Pursuant to the three-step analysis in *Demoney-Hendrickson*, the district court was required to determine the parties' respective interest in the property before the court could calculate Maciosek's damages for Dow's unpaid share of the mortgage. Thus, Maciosek's damages were unascertainable until the district court rendered its decision regarding the parties' property interest and calculated Maciosek's damages. Prejudgment interest could not be assessed until that calculation was complete. Therefore, the district court did not abuse its discretion when it denied Maciosek's motion to alter or amend the judgment for prejudgment interest against Dow.

## D.    Attorney Fees and Costs on Appeal

Dow requests attorney fees on appeal pursuant to Idaho Appellate Rule 41 and I.C. § 12-121. An award of attorney fees may be granted under I.A.R. 41 and I.C. § 12-121 to the prevailing party and such an award is appropriate when the Court finds that the appeal has been brought or defended frivolously, unreasonably, or without foundation.

That standard has been met in this case. As noted above, on the first issue, Maciosek argues on appeal that Dow possessed no interest in the property despite making a judicial admission in the district court that Dow held a forty-five percent ownership interest in the property. As to the percentage of Dow's ownership, Maciosek fails to address the relevant caselaw that holds a party's name on an unambiguous deed results in a presumptive equal ownership. When arguing that Dow

11

should not be excused from paying his share of the mortgage after his ouster, Maciosek's argument is one sentence: "Being excused from making his fair share of a mortgage payment is not the remedy available to Dow for being ejected from the property." Finally, when arguing Maciosek was entitled to twelve percent prejudgment interest, Maciosek's argument consists of two sentences, does not address relevant findings of the district court, or apply any of the authority cited. Therefore, Dow is entitled to attorney fees on appeal pursuant I.C. § 12-121 because the appeal was pursued frivolously, unreasonably, or without foundation. Costs are awarded to Dow as the prevailing party.

## IV.
## CONCLUSION

We affirm the district court's amended judgment finding Dow holds an undivided fifty percent interest in the property, Maciosek is not entitled to Dow's unpaid share of the monthly mortgage payment after Dow was ousted, and Maciosek is not entitled prejudgment interest. Dow is entitled to attorney fees on appeal. Costs are awarded to Dow as the prevailing party.

Chief Judge TRIBE and Judge GRATTON, **CONCUR**.